IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01308-MJW

EDITH L. JACKSON-COBB,

Plaintiff,

v.

SPRINT UNITED MANAGEMENT,

Defendant.

---

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 34)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    Plaintiff Edith Cobb alleges that her former employer, Defendant Sprint/United Management Company, discriminated against her in a variety of unlawful ways. Defendant moves to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

    The Court has considered the parties' filings (Docket Nos. 34, 35, & 36), taken judicial notice of the Court's entire file in this case, and reviewed the applicable Federal Rules of Civil Procedure, statutes, and case law. The Court also reconfirmed with Plaintiff, at the November 18, 2015 scheduling conference, that she intended her filing (Docket No. 35) to serve as her response to the motion to dismiss. (Docket No. 40.) Now being fully informed, the Court grants Defendant's motion and dismisses this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## Facts Alleged in the Amended Complaint

In August 2014, Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and the EEOC, containing the following statement:

> I believe I was unlawfully discriminated against because of: My race/color, sex, age, disability, and/or in retaliation for engaging [in] protected activity.  1) I was hired on or about April 3, 2006 as a Finance Specialist III and performed my duties at all times satisfactorily.  2) On or about April or May 2014, I submitted a Family Medical Leave Act request so I could attend medical appointments.  I was asked to resubmit my request at the end of July 2014.  3) On or about May 2014, I bid for, and was denied, either a 5-1:30 p.m. or 5:30 to 2 p.m. shift so I could take on another job and attend medical appointments.  4) On or about July 31, 2014, I submitted leave requests for my medical appointments.  5) On or about August 1, 2014, I was discharged.  I was told it was for avoiding calls.  6) Other employees outside my protected class were provided with verbal or written warnings and suspensions before being discharged for avoiding calls.  7) I believe I was discriminated against based on my protected class(es) and/or in retaliation for engaging in protected activity.

(Docket No. 6, p.8.)

In an interview with a CCRD investigator, Plaintiff described certain incidents in greater detail:

> On or about January or February 2014, [Plaintiff] requested a new headset from her Supervisor Delvin Willis because hers was broken.  Furthermore, she asked if she could pick it up from the call center during an event being held there.  Willis told her she would have to wait.  Following an exchange of emails, she was given a verbal warning by Greg Boots, Manager, because he did not like the tone of her email exchanges.  Nonetheless, another Manager assisted her in getting her headset and she was able to pick it up on the day she requested.

> On or about March 2014, there was a system outage due to a snowstorm.  According to [Plaintiff], when events like this took place, Call Center employees working from home were given a one-hour window to report to the Call Center to work their shifts.  Her supervisor, Willis, demanded that she and her entire team come in that day in spite of the snowstorm.  While she was on her way there, he called and told her that the system was down at the Center and not to come in.

On or about May 2014, [Plaintiff] attempted to bid for a 5-1:30 or 5:30-2 shift so that she would be able to take her medical appointments and also so she could secure additional work beyond her role with the respondent. She says she was offered a temporary early shift schedule, which she refused because she says she needed the shift assignment to be permanent.

Also in April/May 2014, a request for FMLA that [Plaintiff] had put in to enable her to go to her medical appointments was approved. Subsequently, she ended up taking charge of her niece, who has MS, and was required to submit an additional request for leave to enable her to assist in her care. She submitted the latter request to her doctor shortly before it was due to the Respondent. She believes, in part, that she was discharged to prevent her from submitting this second request.

On or about July 16, 2014, [Plaintiff] says she sent in a request for scheduled PTO so she could attend a meeting with her niece and her niece's social worker on July 18. On July 17, the social worker called and rescheduled, so [Plaintiff] attempted to remove 1. 5 hours from her request. In response, she was told that she had submitted a request for leave less than 48 hours in advance (Respondent's policy required this much notice for a scheduled PTO request) and that she was being charged 1.5 hours unscheduled time. [Plaintiff] says an unscheduled request counts against employees. Nonetheless, she says that the issue was eventually resolved and the RP changed the request to 1.5 hours of leave time instead.

On or about July 24, 2014, [Plaintiff] says she was diagnosed with skin cancer. On or about July 31, 2014, she put in her leave requests for her medical appointments for the month of August. Typically, she says, she receives nearly immediate confirmation of these requests. On this occasion, however, she did not, leading her to believe that something was amiss.

On or about August 1, 2014, Stacy Wilson, a Manager who [Plaintiff] had only been reporting to for five days, called [Plaintiff] regarding irregularities with her login codes on July 25 and July 28. Specifically, she was told she used the wrong login code—arrival prep—and had used the "personal" code for an inordinate amount of time. Wilson then accused [Plaintiff] of avoiding calls and told her that she was terminated. [Plaintiff] avers that she had never before been disciplined for avoiding calls.

According to [Plaintiff], other employees who had been accused of avoiding calls had been given at least a three day suspension before being terminated. Furthermore, she found the call odd because her

4

> understanding was that, whenever a manager spoke with employees regarding disciplinary issues, there were supposed to be at least two people on the line. Wilson, however, was the only other person on the line.

(Docket No. 6, pp.15–16.)[1] The CCRD found no probable cause. (Docket No. 1-1.)

Plaintiff's Amended Complaint provides some material facts. Plaintiff alleges that, after developing "extended coughing and other medical problems," she "applied to work at home where [she] could utilize oxygen on a regular basis and attend medical appointments easier." (Docket No. 6, p.3.) She worked on a number of teams and shifts over the years. (*See id.*) At some point, she "received emails about other Black employees that were severely disciplined by Manager Carol Rutan and Stacey Wilson, both White." (*Id.*) She forwarded those complaints to senior managers, but "one of the employees, Debra Weaver, Black, was later fired for 'call avoidance' by these two supervisors." (*Id.*) A second Black employee suffered harassment from these supervisors, and a third Black employee was also fired under the pretense of call avoidance. (*Id.* at 4.)

Carol Rutan and Stacey Wilson "constantly discuss[ed]" Plaintiff's medical issues with others, and Rutan once unreasonably asked Plaintiff to switch desks despite Plaintiff's breathing difficulties. (*Id.*) A different supervisor, Gregory Boots, "wrote [Plaintiff] up for false charges" after talking to Rutan and Wilson about Plaintiff. (*Id.* p.5.) Plaintiff frequently attempted to change supervisors

---

[1] Plaintiff attached the investigator's notes to her Amended Complaint, making them part of her pleading. Fed. R. Civ. P. 10(c).

"due to intimidation," but with limited success; meanwhile, a white employee, Diane Terrell, had no difficulty in frequently changing supervisors. (*Id.*) Plaintiff requested an early-morning shift (starting at 5:00 a.m. or 5:30 a.m.), but was denied that shift, because Rutan was the manager and did want Plaintiff on the team. (*Id.*) Wilson became Plaintiff's supervisor in late July 2014; Plaintiff was fired five days later. (*Id.*)

Further, Plaintiff had informed Defendant of a recent skin-cancer diagnosis and of her need to take care of a niece with multiple sclerosis—and of Plaintiff's need for an earlier shift so that she could make doctor's appointments and take care of her niece without exhausting her paid time off. (*Id.* at 6.) Plaintiff alleges that she was fired, and denied the early shift, to prevent her from using paid time off in this way, and to preempt any forthcoming FMLA leave request. (*Id.*)

Plaintiff has two previous EEOC claims, both of which she declined to litigate during the 90-day window following her right to sue letters. (*Id.*) She asks the Court to consolidate the matters into this one case. (*Id.*)

## Discussion

As to Plaintiff's two previous EEOC claims, the Court has no jurisdiction to revive them and combine them into this case. *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1186–88 (10th Cir. 2006). To the extent Plaintiff states claims outside the scope of her current EEOC charge, the Court dismisses those claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

6

As to Plaintiff's current claim—from her 2014 charge of discrimination—Defendant moves to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). The Tenth Circuit has recently explained the applicable standards:

> . . . To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. Disregarding conclusory statements, the remaining factual allegations must plausibly suggest the defendant is liable. A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct. Such facts must raise a right to relief above the speculative level.

*McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014)(internal citations, quotation marks, and alterations omitted).

The Court agrees that the Amended Complaint raises no plausible inference that Defendant might be liable, under any theory of discrimination. Plaintiff checked the boxes on her Amended Complaint for discrimination based on race, color, religion, sex, and other, filling in "age, retaliation, disability, harassment, threats, intimidation, fear." Setting aside those grounds for which Plaintiff's factual allegations are literally silent (sex, religion, age), Plaintiff appears to allege the following theories of discrimination:

- Failure to accommodate Plaintiff's medical needs by assigning her to an early-morning shift such that she could attend medical appointments without using paid time off;

- Refusing to reassign Plaintiff to another supervisor despite doing so for other, nonminority employees;

- Creating a hostile work environment based on Plaintiff's medical needs and, perhaps, her race;

- Firing or otherwise retaliating for Plaintiff's FMLA leave request; and

- Firing Plaintiff and other Black employees on the pretense of call avoidance.

7

None of these theories have been sufficiently alleged to allow the Court to reasonably infer liability.

As to the failure-to-accommodate theory, Plaintiff does not allege any disability that prevented her from working her normal work schedule. She alleges a new diagnosis requiring doctor's appointments—but even assuming her skin cancer constitutes a disability, an employer who provides sufficient paid time off or other sick leave is not required to rearrange an employee's schedule to avoid conflicts with intermittent doctor's appointments. *Cf. Aldrich v. Boeing Co.*, 146 F.3d 1265, 1272 n.7 (10th Cir. 1998) (collecting cases on paid time off). Rather, the paid time off itself is a reasonable accommodation. Plaintiff therefore fails to state a claim.

As to the reassigning-supervisor theory, the ADA does not require Defendant to accommodate Plaintiff's demand for a particular supervisor. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 (8th Cir. 1999) ("Amir's request for another supervisor was not a reasonable accommodation under the ADA because it was not disability related."). Further, failing to reassign shifts or supervisors does not constitute an adverse action for purposes of a Title VII theory, either. *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1096 (D. Colo. 2012) (citing *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir.2006)).

As to the hostile-environment theory, the minor and sporadic incidents alleged by Plaintiff—even with all reasonable inferences drawn in Plaintiff's favor—do not rise to the level of harassment necessary to state a claim. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (claim requires "discriminatory intimidation, ridicule,

8

and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"); *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) ("To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance."). The specific factual conduct alleged by Plaintiff shows nothing more than a couple of minor irritations and three reports of discrimination against others several years earlier. This does not raise a plausible inference of a hostile work environment.

As to the FMLA retaliation theory, the Court concludes that—even drawing inferences in Plaintiff's favor—she has failed to allege a prima facie case. "To state a prima facie case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). The Court can reasonably infer the first two elements from the Amended Complaint. But given the two- or three-month gap between those events, Plaintiff needs more than mere temporal proximity to raise a causal inference. *Id.* at 1171–72. There are no other facts alleged from which the

9

Court could reasonably infer a causal connection, and as a result this theory also fails to state a claim.

Finally, as to the pretextual-firing claim, Plaintiff has likewise failed to allege facts plausibly establishing (or giving rise to reasonable inferences plausibly establishing) a prima facie case. To set forth a prima facie case of discrimination under *McDonnell Douglas*, a plaintiff must establish that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). Plaintiff fails to establish the last element: although she alleges that other individuals were suspended rather than fired for call avoidance, she does so in conclusory fashion only, providing the Court with no basis from which to infer that those individuals were not members of the protected class or were in any respect similarly situated. Without such allegations or reasonable inferences, Plaintiff has not stated a claim.

## **Order**

It is hereby ORDERED that:

- Defendant's Motion to Dismiss (Docket No. 34) is GRANTED; and
- This case is DISMISSED WITH PREJUDICE, each side to pay its own costs and fees.

Dated:   November 23, 2015        */s/ Michael J. Watanabe*
         Denver, Colorado         Michael J. Watanabe
                                  United States Magistrate Judge