IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01308-MJW

EDITH L. JACKSON-COBB,

Plaintiff,

v.

SPRINT UNITED MANAGEMENT,

Defendant.

---

**ORDER ON DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT (Docket No. 50)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this Court for all purposes pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c) upon consent of the parties and the Order of Reference Upon Consent to Jurisdiction of Magistrate Judge issued by Chief Judge Marcia S. Krieger on September 15, 2015 (Docket Nos. 32 & 33).

Now before the Court is the Defendant's Motion to Dismiss the Second Amended Complaint (Docket No. 50). Plaintiff filed a response (Docket No. 51) and Defendant filed a reply (Docket No. 54). The Court has reviewed the parties' filings. The Court has further taken judicial notice of the Court's entire file in this case and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court grants the motion.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## Procedural Background

Plaintiff initially filed this case pro se and was granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  (Docket Nos. 1 & 4.)  As a result, the Court reviewed Plaintiff's Amended Complaint (Docket No. 6) and dismissed the claims it found frivolous.  (Docket No. 9.)  Therefore, when this case was reassigned to the undersigned, only Plaintiff's employment discrimination claims against Defendant Sprint United Management remained.  (*Id.* at 3.)  On September 14, 2015, the Court granted Plaintiff's request for appointment of pro bono counsel (Docket No. 29), however, counsel was not appointed at that time and the case proceeded.  On November 23, 2015 at approximately 9:30 a.m., the Court granted Defendant's Motion to Dismiss (Docket No. 34) and dismissed the case with prejudice.  (Docket No. 42 at 9.)  Final Judgment was entered in favor of Defendant that day at approximately 10:25 a.m. (Docket No. 43.)  That afternoon at approximately 1:00 p.m., attorney Jeffrey Klaus entered his appearance on behalf of Plaintiff.  (Docket No. 44.)  At approximately 2:30 p.m., the Clerk of the Court filed a Notice of Pro Bono Appointment informing the Court that the Clerk of the Court secured pro bono counsel pursuant to the Court's September 14, 2015 Order.  (Docket No. 45) The following day, November 24, 2015, Plaintiff, through her newly-appointed pro bono counsel, filed a motion for reconsideration of the order dismissing her case and a motion seeking leave to file a Second Amended Complaint.  (Docket Nos. 46 & 47.)  Collectively, these motions sought reconsideration of the dismissal and asked the Court to allow Plaintiff to file a Second Amended

Complaint that states a Title VII claim of discriminatory termination and a Title VII claim of retaliatory termination, as well as related claims under Colorado law. (Docket No. 47 at 2.) On November 25, 2015, the Court granted both motions and accepted the proposed Second Amended Complaint for filing. (Docket No. 48.) In response, Defendant filed the instant motion. (Docket No. 50.)

## Allegations[1]

Plaintiff brings claims against Defendant, her former employer, pursuant to Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Colorado Civil Rights Act, Colo. Rev. Stat. § 24-30-402, et seq. (Docket No. 49 ¶¶ 2, 4, 35-44.) Plaintiff is African-American and began working for Defendant on or about April 3, 2006. (*Id*. ¶¶ 11-12.) Plaintiff alleges that "[f]rom 2006 until her termination, Plaintiff was qualified for her position, has satisfactorily performed all of the essential functions of his [sic] job, and has received satisfactory performance evaluations." (*Id*. ¶ 13.) Plaintiff made complaints to "senior managers, including Eva-Maria Bevalaqua and/or John Messall" regarding "potentially discriminatory" treatment of herself and other black employees "[b]eginning as early as 2010 and continuing until her termination . . . ." (*Id*. ¶ 14.) Plaintiff's complaints "involved allegations of discrimination by managers/supervisors, Carol Rutan and Stacey Wilson, both white." (*Id*. ¶ 16.) Plaintiff

---

[1] For the purposes of considering the motion, the Court takes the following facts from the Second Amended Complaint [#49]. The factual allegations in Plaintiff's Second Amended Complaint are presumed true unless they are conclusory or contradicted by other, more specific allegations. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("conclusory and formulaic recitations" of the elements "are insufficient to survive a motion to dismiss"); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014) (holding that "general allegations that are contradicted by more specific allegations in the Complaint" need not be accepted as true (quotation omitted)).

"also previously filed formal charges and complaints of discrimination with the EEOC/CCRD"[2] that Plaintiff alleges "constituted protected activities" under Title VII. (*Id.* ¶¶ 17-18.) Plaintiff maintains that Carol Rutan and Stacey Wilson were aware of those complaints and "made false or misleading statements about Plaintiff to Gregory Boots with the intent of retaliating against Plaintiff for her complaint." (*Id.* ¶¶ 19-20.) Plaintiff alleges that Carol Rutan and Stacey Wilson "plotted to terminate Plaintiff." (*Id.* ¶ 21.) According to Plaintiff, "[i]n the spring of 2014, [she] made FMLA leave requests in order to assist her in scheduling medical treatment and appointments related to serious medical conditions and to care for a niece recently diagnosed with MS." (*Id.* ¶ 22.) "Plaintiff also applied for certain morning shifts such that she would be better able to attend medical treatment and appointments and care for her niece." (*Id.* ¶ 23.) Plaintiff maintains that her seniority was such that she "should have been awarded" the requested shifts. (*Id.* ¶ 24.) Plaintiff alleges that she was denied those "shifts due to the wrongful and unlawful interference of certain employee [sic], including, but not limited to, Carol Rutan and Stacey Wilson." (*Id.* ¶ 25.) "On or about July 25, 2015, Plaintiff experienced an internet outage" and she "complied with all policies and protocols related to [the] internet outage." (*Id.* ¶¶ 26-27.) In late July 2014, Stacey Wilson became Plaintiff's supervisor and, according to Plaintiff, "[a]lmost immediately upon becoming Plaintiff's supervisor, Stacey Wilson wrongfully, without cause, and with discriminatory and/or retaliatory intent, initiated an investigation to occur, whereby

---

[2] According to the Second Amended Complaint, Plaintiff "timely filed joint charges of discrimination" with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 7.)

Plaintiff's job activity codes were reviewed." (*Id.* ¶¶ 28-29.) Defendant concluded that Plaintiff "engaged in 'call avoidance' on July 25 and July 28, in violation of Call Center Guidelines." (*Id.* ¶ 30.) Plaintiff was terminated on or about August 1, 2015. (*Id.* ¶ 31.) "Plaintiff was told that the reason for [her] termination was 'call avoidance.'" (*Id.*) Plaintiff alleges that this reason was pretextual. (*Id.*) Stacey Wilson was a decision-maker regarding the decision to terminate Plaintiff. (*Id.* ¶ 32.) Plaintiff maintains that Ms. Wilson improperly influenced the decision-making process "for discriminatory and retaliatory motives." (*Id.*) Plaintiff alleges that her "job activity codes were proper, were consistent with her job activities and were consistent with job activity codes for prior periods, and that no violation of the Call Center Guidelines occurred." (*Id.* ¶ 33.) Finally, Plaintiff maintains that "other employees outside [sic] Plaintiff [sic] protected class were routinely given only verbal or written warnings, or suspended before being discharged for 'call avoidance.'" (*Id.* ¶ 34.)[3]

**The Motion**

In the motion, Defendant argues that Plaintiff's claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Defendant maintains that the "Second Amended Complaint simply repackages the same conclusory allegations found in

---

[3] While Plaintiff attempts to incorporate by reference (Docket No. 49 ¶ 10) all prior factual allegations included in her First Amended Complaint (Docket No. 6), the filing of the Second Amended Complaint supersedes the First Amended Complaint and renders the First Amended Complaint of no legal effect. *Franklin v. Kan. Dep't of Corr.*, 160 F.App'x. 730, 734 (10th Cir. 2005) (citations omitted). Consequently, the Court examines only those claims that were included in Plaintiff's Second Amended Complaint. *Id.* (Holding that "once the second amended complaint was accepted for filing, the district court did not err in examining only those claims that were included in Franklin's second amended complaint."). Therefore, to the extent Plaintiff's response relies on the allegations made in Plaintiff's First Amended Complaint in order to bolster the factual allegations included in her Second Amended Complaint (Docket No. 51 at 2-3), such reliance is improper.

[Plaintiff's] First Amended Complaint" and that "Plaintiff fails to add any *objective, concrete* facts to support her statements of legal conclusions." (Docket No. 50 at 2) (emphasis in original). Defendant argues that Plaintiff's claim of discrimination based on race fails because Plaintiff fails "to allege any facts showing that she was treated less favorably on the basis of race." (*Id.* at 7.) As Defendant argues,

> even as amended, Plaintiff does not allege sufficient facts to establish that any of Sprint's actions were taken *because of* her race or color. Plaintiff relies wholly on her own unfounded supposition and statements of legal conclusion, but does not offer any concrete facts demonstrating that Sprint treated her any differently from any other employee on the basis of any protected class.

(*Id.*) (emphasis in original). Defendant maintains that Plaintiff's allegations are not specific enough and are made "on information and belief," which is insufficient. (*Id.* at 8-9.) With regard to Plaintiff's retaliation claim, Defendant argues that Plaintiff "does not allege any plausible causal connection between her alleged protected activity and her termination." (*Id.* at 10.) In addition, Defendant maintains that "merely alleging a generic 'plot' to terminate Plaintiff" does not constitute at valid claim because "Plaintiff [does] not allege any connection between this supposed plot and her eventual termination." (*Id.* at 11.)

In her Response, Plaintiff argues that her factual allegations are sufficiently specific to establish each element of her claims. (Docket No. 51 at 3.) Plaintiff further argues that the allegations made "on information and belief" are proper because they relate to "the state of mind of another person." (*Id.* at 3.) Plaintiff avers that the protected activities she engaged in that led to the alleged discrimination ranged from 2010 though her termination and, in addition to the charges she filed, she also was

6

denied shift changes which "give rise to further inferences of discriminatory and retaliatory motive." (*Id.*) Plaintiff next argues that her allegations regarding the internet outage sufficiently allege that Defendant's pro-offered reason for terminating her is false. (*Id.* at 4.) With regard to the treatment of other employees alleged by Plaintiff, she argues that more detailed information regarding those employees is in the control of Defendant, not Plaintiff, and that these allegations are "otherwise specific enough for the Court to infer discrimination." (*Id.* at 5.) Plaintiff maintains that her discriminatory termination claim is sufficiently alleged. (*Id.* at 5-6.) Turning to her retaliation claim, Plaintiff revisits her earlier arguments but focuses on retaliation. (*Id.* at 6-8.)

In its Reply, Defendant discusses the standard of review, noting that Plaintiff mainly cites to outdated law. (Docket No. 54 at 2-4.) Defendant argues that *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012), in which the Tenth Circuit concluded that a Plaintiff did not sufficiently allege a Title VII claim, "is not distinguishable in any meaningful way from the case at bar." (*Id.* at 3.) Defendant then revisits its arguments that Plaintiff fails to plead the elements of her claims. (*Id.* at 4-8.)

## Standard of Review

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Tenth Circuit has recently explained the standard under Rule 12(b)(6):

> To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. Disregarding conclusory statements, the remaining factual allegations must plausibly suggest the defendant is liable. A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct. Such facts must raise a right to relief above the speculative level.

7

*McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (internal citations, quotation marks, and alterations omitted).

## Analysis

Under Title VII, an employer may not discriminate on the basis of race, color, religion, sex, or national origin, or take adverse action against an employee who has engaged in protected conduct. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

### *Discrimination Claim*

Because Plaintiff does not allege any direct evidence of discrimination, her Title VII claim is analyzed under the burden-shifting framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bird v. Regents of New Mexico State Univ.*, 619 F.App'x 733, 741 (10th Cir. 2015); *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005). A plaintiff bears the initial burden to establish a prima facie case for discrimination. *Id.* Once a prima facie case is established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.* In the motion, Defendant argues that Plaintiff fails to establish a prima facie case under Title VII as to each Title VII claim. Defendant appears to also believe that it had a legitimate, nondiscriminatory reason for terminating Plaintiff, as alleged in the Second Amended Complaint—Plaintiff's failure to follow procedure when there was an internet outage. However, the parties do not argue

this issue, so the Court limits its analysis to whether Plaintiff states a prima facie case under Title VII for each of her two claims.[4]

As the Tenth Circuit has explained, "[t]o set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she [was] qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)). There is no dispute that Plaintiff alleges that she is a member of a protected class or that she suffered an adverse employment action. Plaintiff alleges that she is African-American and that her employment with Defendant was terminated on August 1, 2015. (Docket No. 49 ¶¶ 12, 31.) Defendant does not appear to challenge Plaintiff's allegation regarding her qualifications for the position (Docket No. 50 at 7)[5], accordingly, the Court focuses on the fourth element.

---

[4] Defendant mentions Plaintiff's allegation that her termination was pretextual in the "Relevant Allegations" section of the motion. (Docket No. 50 at 4.) In the section of her response titled "Plaintiff's Allegations [A]re Sufficient," Plaintiff argues that her allegation that she followed protocols shows that Defendant's reason for terminating her was pretextual. (Docket No. 51 at 4.) However, neither party makes any substantive legal. As a result, the Court does not analyze legal questions involved in the second and third steps of the *McDonnell Douglas* framework.

[5] Defendant simply states that Plaintiff "also alleges that she was qualified for the position, albeit in a perfunctory and conclusory manner." (Docket No. 50 at 7). The Court will not construct an argument for Defendant regarding this third element of Plaintiff's claim that is not included in Defendant's briefing of the motion. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts...have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record...and make a party's case for it."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Plaintiff's only factual allegation in support of the fourth element of her discrimination claim is found in paragraph 34 of her Second Amended Complaint:

> Upon information and belief[,] other employees outside Plaintiff['s] protected class were routinely given only verbal or written warnings, or suspended before being discharged for "call avoidance."

(Docket No. 49 ¶ 34.) Defendant argues that this allegation is insufficient under the *Twombly/Iqual* standard as it was explained and applied in *Khalik*. Plaintiff argues that her various allegations made on information and belief are proper because they relate to the state of mind of others, are not within Plaintiff's knowledge, and Plaintiff should be allowed discovery to obtain further information about these factual allegations. (Docket No. 51 at 3.) However, this factual allegation is a linchpin of Plaintiff's claim and it does not rely on the state of mind of others in the way Plaintiff implies. The Court finds that this factual allegation is conclusory. As the Tenth Circuit held in *Khalik*, after disregarding the conclusory allegations, "[t]here are no allegations of similarly situated employees who were treated differently." *Khalik*, 671 F.3d at 1194.

However, even if the Court found that this allegation was not conclusory, Plaintiff's allegation in paragraph 34 of her Second Amended Complaint fails to plead this element. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted) (discussing disparate treatment claim). Plaintiff's factual allegation regarding other employees is extremely vague and provides no information that would allow the Court to conclude that any of these "other employees" were performing a similar job or were even employed in the same state as Plaintiff. As a

result, Plaintiff has failed to plead a racial discrimination claim. *See Brainard v. City of Topeka*, 597 F.App'x 974, 979 (10th Cir. 2015) (affirming district court's conclusion that plaintiff failed to show that male employee was similarly situated when he had the same title but different responsibilities and more experience). Accordingly, the Court grants the motion to the extent is seeks dismissal of Plaintiff's Title VII discrimination claim. *See Aliyev v. Fedex Ground Package Sys. ,Inc.*, 2014 WL 1338583, at *6-7 (C.D. Utah April 3, 2014) (discussing disparate treatment and concluding that "[t]he difficulty with that argument is that Mr. Aliyev does not point to even one situation where a similarly-situated co-worker may have been treated differently. Without at least a scintilla of evidence (or, in this case, at least one factual allegation) from which the court could infer that disparate treatment may be an issue at FedEx Ground, the court cannot justify granting Mr. Aliyev permission to conduct what would essentially be a fishing expedition.").

> Notably, in her Response, Plaintiff states:
>
> Defendant over-blows the fact that no employees that were the subject of some of Plaintiff's protected activities were identified by name as being the victim of the discrimination. The identity of such employees is not necessary to a proper allegation in this regard. Defendant failed to disclose; however, that three such employees have been identified in Plaintiff's Initial Disclosure Statement served on the Defendant on November 18, 2015. Such issue is really a side-show, because it really does not matter who those employees are. Similarly, it is not even relevant if such individuals were actually the victim of actionable discrimination. All that is relevant is that the Plaintiff engaged in protected activity.

(Docket No. 51 at 7-8.) This confuses the issue. Disclosure of when Plaintiff raised the issue of other minority employees being discriminated against would be relevant to Plaintiff's retaliation claim as discussed below. However, the identity of, or at least

11

some allegation of the existence of, non-African-American employees who were *similarly situated*, as that term is defined under the law, and treated differently are what is important to this analysis. Regardless, this information is not included in the Second Amended Complaint, which is what the motion challenges.

***Retaliation Claim***

Title VII's anti-retaliation provision forbids an employer from discriminating against an individual because that individual "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Where the plaintiff seeks to prove a Title VII retaliation claim through indirect or circumstantial evidence, the burden-shifting analysis of *McDonnell Douglas Corp.*, 411 U.S. 792, applies. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). To establish a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must demonstrate: (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Whether Plaintiff filed a formal complaint or made an informal complaint, any employee who opposes discrimination or participates in Title VII's process is protected. 42 U.S.C. § 2000e-3(a); *see Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007) (filing an EEOC claim is a protected activity, as a matter of law); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008) (informal complaints of discrimination to one's superiors may also constitute protected activity) (citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "A causal connection is

established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive . . . ." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (internal quotation omitted).

Plaintiff alleges that Defendant retaliated against her after she "made complaints to senior managers" regarding allegations of discrimination beginning in 2010 through her termination. (Docket No. 49 ¶¶ 14-16.) Plaintiff notes that she also filed formal complaints with the EEOC and the CCRD which predated her termination. (*Id.* ¶ 17.)[6] As the Tenth Circuit has explained,

> Under our precedent, the requisite causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal*, 237 F.3d at 1253 (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982)) (internal quotation marks omitted). Where, however, "very close temporal proximity between the protected activity and the retaliatory conduct" is lacking, "the plaintiff must offer additional evidence to establish causation." *Id.*
>
> . . . It appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference; but it is equally patent that if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." (citations omitted)). However, where along the temporal line beyond one and one-half months but short of three months, the adverse action's timing ceases to be sufficient, standing alone, to establish the requisite causal inference is less than pellucid. *See, e.g., Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir.2004) (suggesting that "two months and one week" was "probably too [long] . . . to establish causation by temporal proximity alone" (emphasis added)).

---

[6] Plaintiff's request to work different shifts and the reassignment of supervisors are not adverse action under Title VII. (Docket No. 42 at 7-8.)

*Conroy v. Vilsack*, 707 F.3d 1163, 1181-82 (10th Cir. 2013).

In this case, Plaintiff was terminated on August 1, 2015. (Docket No. 49 ¶ 31.) Plaintiff alleges that she made complaints about discriminatory treatment "as early as 2010 and continuing until her termination," that she requested FMLA leave in "the spring of 2014," and that she also applied for morning shifts for the same reason she applied for the FMLA leave. (*Id.* ¶¶ 14, 22-23.) Even if the Court assumes, arguendo, that all of these activities are protected, none of them occurred within a year of her termination. Further, to the extent Plaintiff alleges that she made complaints about discriminatory treatment "until her termination," this allegation is too conclusory to be credited as alleging that she made complaints within three months of her termination. The pleading standard exists in order to give potential defendants notice of what claims they must defend against. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Because Plaintiff has not shown temporal proximity between the protected activity and the retaliatory conduct, she "must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted). An employee cannot establish a causal connection between the protected opposition and the adverse employment action unless she can show her superior knew she engaged in such protected opposition. *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) ("An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition."). Plaintiff alleges that Ms. Wilson was her supervisor at the time she was terminated. (Docket No. 49 ¶¶ 28, 32.) With regard to Ms. Wilson, Plaintiff alleges that her complaints regarding senior

managers that she made "as early as 2010 and continuing until her termination" were about Ms. Wilson and another individual. (*Id.* ¶¶ 14, 16.)  Plaintiff further alleges "upon information and belief" that Ms. Wilson was "made aware of the claimant[7] made by Plaintiff." (Docket No. 49 ¶ 19.)  Plaintiff also alleges that "Ms. Wilson was a decision-maker regarding Defendant's decision to terminate Plaintiff and, for discriminatory and retaliatory motives, unduly and improperly influenced that decision making process." (*Id.* ¶ 32.)  In order to state a prima facie claim, a plaintiff's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  The question then becomes whether these allegations meet the pleading requirements of Rule 8.

Defendant argues that Plaintiff's allegations made on information and belief are conclusory and speculative and should not be credited.  (Docket No. 50 at 8-9.)  Plaintiff argues that these allegations are not "presumptively within the Plaintiff's knowledge" and that she should be allowed to plead them on information and belief because she has not had the benefit of discovery.  (Docket No. 51 at 3.)  The Court agrees that Plaintiff cannot be required to know that Ms. Wilson was informed of Plaintiff's complaints made about her, however, Plaintiff offers no support for this conclusory allegation.  The Tenth Circuit has held in various contexts that allegations, even allegations of fraud, may be made on information and belief so long as the complaint sets forth the factual basis of the belief.  *See, e.g., Scheidt v. Klein*, 956 F. 2d 963, 967 (10th Cir. 1992) ("Allegations of fraud may be based on information and belief when the

---

[7] The Court believes the word "claimant" to be a typographical error and that Plaintiff intended to use the word "complaint."  Plaintiff's response supports this reading by noting that "Ms. Wilson became aware of the complaint . . . ."  (Docket No. 51 at 7).

facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."). In this case, Plaintiff offers no further information about why she believes Ms. Wilson knew about her complaints. For example, when did Ms. Wilson learn about the complaint? Who may have told her? Did Ms. Wilson speak to Plaintiff about the complaint? Did someone else tell Plaintiff that Ms. Wilson knew about her complaint? Without more information, this is simply a conclusory factual allegation that appears to be made to satisfy an element of this claim. *Cf. Henson v. Bank of Am.*, 935 F.Supp.2d 1128, 1138 (D. Colo. 2013) ("Indeed, the Second Amended Complaint simply suggests 'on information and belief' that 'Bank of America entered into one or more unlawful agreements with LPS and/or DocX to "manage or process" its foreclosures.' There is no indication as to when these 'agreements' took place or in what manner these agreements were 'unlawful.'") (citations omitted). As a result, the Court cannot credit Plaintiff's conclusory allegation made on information and belief. *See Building On Our Best LLC v. Sentinel Ins. Co., Ltd.*, 2015 WL 7014445, at *5 (D. Colo. Nov. 12, 2015) ("The Amended Complaint does not set forth the factual basis for Plaintiffs' beliefs. While this Court must construe well-pleaded facts in Plaintiffs' favor when deciding a Rule 12(b)(6) motions [sic], these allegations are not entitled to that favorable construction."). Therefore, the Court concludes that Plaintiff has not plead facts showing that "a causal connection existed between the protected activity [her complaints alleging discriminatory conduct] and the materially adverse action [her termination]." *Argo*, 452 F.3d at 1202. As a result, the Court finds that Plaintiff has not stated a retaliation claim and the Court grants the motion to the extent is seeks dismissal of Plaintiff's Title VII retaliation claim.

*State Law Claim*

In addition to the two federal claims discussed above, Plaintiff mentions the Colorado Civil Rights Act, Colo. Rev. Stat. §24-34-402, et seq., within her retaliation claim. (Docket No. 49 ¶ 37.) It is unclear whether Plaintiff intends to bring a state law claim because neither party addresses the Colorado Civil Rights Act in the briefing of the motion. However, because it is mentioned in the Second Amended Complaint, the Court briefly addresses this potential claim.

28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims. However, a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

Here, because the Court dismisses both of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to the extent Plaintiff is bringing a claim under the Colorado Civil Rights Act. The Court, therefore, dismisses this state law claim, to the extent it is plead, pursuant to 28 U.S.C. § 1367(c)(3).

## Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Docket No. 50) is GRANTED. It is further ORDERED that Plaintiff's Title VII

claims are dismissed with prejudice and her state law claim is dismissed without prejudice.  It is further ORDERED that the Clerk of the Court shall close this case.

Date:  March 28, 2016  
       Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge